Kurt SCHMIEDER, Plaintiff,

v.

Helen B. DWYER, Defendant.

No. 69 Civ. 1939.

United States District Court,
S. D. New York.

Aug. 19, 1971.

Werner Galleski, New York City, for plaintiff.

Richard Owen, Morton J. Turchin, Owen & Turchin, New York City, for defendant.

MOTLEY, District Judge.

This is an action by Kurt Schmieder, a citizen of the Federal Republic of Germany, against Helen B. Dwyer, a former New York resident, now deceased, to recover certain properties transferred to her in 1938 pursuant to an alleged "irrevocable and unconditional" gift which plaintiff now seeks to have the court look behind. The essence of plaintiff's claim is that the gift was made to prevent the Nazi regime in Germany, which was in power at the time of the transfer, from using the transferred assets for their own aims. Plaintiff asserts that it was understood among the parties effectuating the transfer, to wit, himself and two United States counsel, William Graupner and Louis Hall, Sr., that such was the purpose of the gift. He claims there was a "gentlemen's agreement" between them to return the property to him at the conclusion of the war. Mrs. Dwyer, an asserted "straw" in the agreement and the person to whom the property was transferred, nev-er had any contact with plaintiff, and was at the time of transfer a secretary in the employ of Mr. Hall, Sr.

The following background facts will be helpful to an understanding of the case:

Plaintiff was living in Germany in 1934. He had certain stocks which were being held in trust for him by the New York Trust Company in the United States. At that time, in an effort to protect himself and his assets (having an aggregate value of $200,000), he transferred their ownership to his sister-in-law, a Swiss national. In or about 1935, plaintiff, feeling that his assets *in nomine* Jenny Bochmann were no longer safe from discovery by the Nazis, sought the counsel of his friend, William Graupner, a United States citizen, as to what he might do. Graupner, in turn, solicited the legal advice of Louis Hall, Sr., also of the United States (Hall, Sr., and Graupner are now both deceased). Louis Hall, Sr. and Graupner advised plaintiff that he should create a corporation to manage the securities. Plaintiff agreed and on or about January 1, 1936, the Stoneleigh Corporation was set up. All 500 shares of the corporation were issued to Mrs. Bochmann in her name. Plaintiff, however, still was fearful that the securities might be traced to him. His fear was well founded in view of the "Act Concerning Economic Sabotage" which had become German law on December 1, 1936. That Act provided for death and confiscation of property of German citizens who concealed property in foreign lands. Mrs. Bochmann was also concerned that her nominal ownership might cause trouble with Swiss authorities. There was also the fear that Switzerland might be overrun by the Nazis as well. Plaintiff finally decided to eliminate all risk by completely divesting himself of all ownership. After discussions with Graupner, plaintiff met with Louis Hall, Sr. in Leipzig, Germany. Mr. Hall, Sr. told plaintiff that Mrs. Dwyer, Hall Sr.'s secretary, would

accept the gift of the property. In March, 1938, all the shares of Stoneleigh Corp. were transferred by Mrs. Bochmann to Mrs. Dwyer by means of three letters—one from Bochmann to Dwyer; one to Hall, Sr.'s firm, setting forth her desire that an unconditional gift be made; one to Stoneleigh Corporation authorizing the transfer. Plaintiff never met with Mrs. Dwyer, but he knew of the transfer arrangements. It is alleged that Louis Hall, Jr., movant here, prepared the documents for the transfer of 1938.

In 1948, the United States, pursuant to the Alien Property Act, seized the securities held by Mrs. Dwyer. She commenced an action against the Alien Property Office in 1949 in the United States District Court for the District of Columbia. At that time plaintiff signed a statement under oath in Germany stating that the gift to Mrs. Dwyer was "voluntary, absolute, and irrevocable . . . without any obligation of Mrs. Dwyer." In 1951, Mrs. Dwyer entered into a stipulation settling the pendent claim; and she received 55% of the value of the property.

During World War II plaintiff had no communication with anyone in the United States. In 1945, at the war's end, he was sentenced to prison by the Soviet Military and Occupation authorities for anti-Communist activities. Following his release plaintiff had conversations with an intermediary sent by Mr. Hall, Sr. and Graupner, and following those discussions the 1948 document referred to above was signed. Shortly after executing the document, plaintiff was reincarcerated by the East German Communist Regime for crimes against the State.

Plaintiff asserts that in 1951 when he finally was released by the East Germans he was advised by a letter from Graupner not to take any action to assert his claim in the action then before the United States District Court (the *Dwyer* suit). He states that he was re-

assured that his interests were being protected by Graupner and Messrs. Hall, Jr. and Sr.

Following Graupner's death in 1954, plaintiff states he was unable to find Mrs. Dwyer until 1969. In 1969, the instant action to impress a constructive trust upon the subject property and for other relief was filed.

Mrs. Dwyer died on May 16, 1969. Plaintiff further alleges that in 1968, Hall, Jr. purporting to act on Dwyer's behalf moved $60,000 (⅝'ths) of the subject property from New York to Massachusetts. There a trust fund with Dwyer as life beneficiary was set up. Said trust provided that upon Dwyer's death the remainder of the property would be distributed in equal shares to Hall, Jr., and his two sisters, Adelaide McIntosh and Virginia Webb. Hall, Jr. was named executor in Dwyer's will of September 6, 1966.

On August 6, 1970 the Surrogate's Court of New York County appointed Hall, Jr., executor (preliminary) of Dwyer's will. Since then charges have been made by distributees of Dwyer that Hall, Jr. unduly influenced Dwyer (his secretary after his father's death) to make her will of 1966 out to him and his two sisters as residuary legatees.

The matter is now before this court on a motion by Louis Hall, Jr., son of the senior Mr. Hall, now deceased, for an order 1) pursuant to Fed.R.Civ.P. 25(a), substituting Louis Hall, Jr., as preliminary executor of the estate of Helen Dwyer, for Helen Dwyer, individually, named defendant in the action, and 2) pursuant to Fed.R.Civ.P. 56, dismissing the complaint on the ground that there are no disputed issues of fact and defendant's estate is entitled to judgment as a matter of law.

Plaintiff's opposition to the motion consists essentially of the following: 1) the relationship of Louis Hall, Jr., to the estate is tenuous since there are presently "meritorious" actions outstanding in opposition to his appointment as prelim-

inary executor of Mrs. Dwyer's estate and, therefore, he should not be substituted as defendant until those actions to have him removed are determined; 2) since movant is a non-party to the suit whose application to be substituted as executor should be denied, he cannot now move for summary judgment; and 3) the motion for summary judgment should be denied in any event because movant has failed to dispel the inference of undue influence arising from the facts and, thus, may not be entitled to a judgment as a matter of law.

The motion to substitute Louis Hall, Jr. is granted for the reasons set forth below.

■ The motion for summary judgment is denied on the ground that there are many disputed issues of fact, including the central issue of whether the gift to Mrs. Dwyer was unconditional or subject to an alleged gentlemen's agreement between plaintiff and the lawyers.

■ The heart of plaintiff's claim in opposition to the substitution of Louis Hall, Jr., is that Louis Hall, Jr.'s position as preliminary executor is tenuous in view of motions brought by plaintiff and Mrs. Dwyer's statutory distributees for revocation of the preliminary letters in the New York Surrogate Court. Movant has pointed out, however, that plaintiff moved for revocation of the preliminary letters as early as December, 1970, and said motion was denied on December 17, 1971. The instant motion was filed April 5, 1971. The papers seeking revocation of the preliminary appointment attached to the moving papers by plaintiff included only memoranda in connection with the motion for revocation. During the pendency of the instant motion, that motion, for reargu-

ment too, has been denied. (Estate of Helen B. Dwyer, N.Y.L.J. at 18, June 18, 1971). Thus, there is no reason for this court to conclude that Louis Hall, Jr.'s removal as preliminary executor is imminent.

Plaintiff next argues that this court should refuse the substitution for the present as a "tactical matter." In particular, plaintiff points out that since the filing of this suit on May 6, 1969, plaintiff has commenced a second action in the United States District Court for the District of Massachusetts on April 15, 1971. Mrs. Dwyer died shortly after commencement of the instant suit on May 16, 1969. The second action is brought against Louis Hall, Jr., the trustee of an inter vivos Massachusetts trust which purportedly consists of ⅝'ths of the property plaintiff claims is his, and two sisters of Louis Hall, Jr., named remaindermen under the trust. According to plaintiff, this court should stay its hand, since he will be pursuing the Massachusetts claim more actively, the risk of a distribution being imminent under that trust.

■ This court is unwilling to use Rule 25(a), a rule which has as its end the expedition of litigation, to accomplish a contrary end, i. e., the slowing down of litigation. There is no reason to afford the Massachusetts action priority over the instant one. (See National Equipment Rental, Ltd. v. Fowler, 287 F.2d 43 (2d Cir. 1961); Bulldog Elec. Prods. Co. v. Cole Elec. Prods. Co., 57 F.Supp. 336 (E.D.N.Y.1944), in which the courts articulate the rule that the first court to obtain jurisdiction over parties and issues should usually have priority over the second court).

The motion pursuant to Fed.R.Civ.P. 25(a) is granted.